1
2
3
4
5
6
7

8 IN THE UNITED STATES DISTRICT COURT

9 FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11 SUSAN GILNER,                                          No. C-07-0960 MMC

12          Appellant,                                    (Case No. 05-31522 DM7
                                                          Adversary Proceeding No. 05-3374)
13     v.
                                                          **DECISION AFFIRMING JUDGMENT OF**
14 LINDA LICALSI, et al.,                                 **BANKRUPTCY COURT**

15          Appellees
                                                    /
16

17        Before the Court is appellant Susan Gilner's ("Gilner") appeal from a judgment

18 entered January 8, 2007 in the United States Bankruptcy Court.  Having read and

19 considered the briefs filed by the parties, the Court rules as follows.

20                                         **BACKGROUND**

21        In 2005, Gilner filed a petition for bankruptcy pursuant to Chapter 7 of the

22 Bankruptcy Code.  (Appellees' Addendum to Record on Appeal ("AR") 0022.)  Thereafter,

23 appellees Linda and Carla Licalsi ("the Licalsis") commenced an adversary proceeding

24 against Gilner, and, on January 6, 2006, filed a "First Amended Complaint to Determine

25 Dischargeability of Debt" ("FAC").  (AR 0001-12.)

26        In the FAC, the Licalsis allege that Gilner and the Licalsis, on March 12, 2002,

27 executed a "Consignment Agreement" under which Gilner obtained the exclusive right to

28 sell the Licalsis' "rare Bechstein Piano," conditioned upon the Licalsis' consenting to any

sale and, in return, Gilner would receive a commission for any approved sale, (AR 0002-03); that after Gilner obtained possession of the piano, she entered into an agreement with Tibor Szabo ("Szabo"),[1] a piano dealer, under which agreement he would act as an agent for Gilner and would "market" the piano, (AR 0003); that Szabo, in September 2002, sold the piano to a third party for approximately $63,000, without the Licalsis consent or knowledge (AR 0004); and that the Licalsis first learned of the sale in April 2003 and have never been paid any proceeds from the sale, (AR 0004-05). Based on these allegations, the Licalsis alleged a claim for embezzlement, as well as related claims. (AR 0001-12.)

On September 25, 2006, the Licalsis filed a motion for summary judgment, arguing they were entitled to summary judgment on their claim against Gilner for embezzlement, as well as on two other claims. (AR 0013-26.) On December 21, 2006, the Bankruptcy Court conducted a hearing on the motion, (AR 0226-45), at which time the Bankruptcy Court orally granted the motion as it pertained to the embezzlement claim (AR 0240). On January 8, 2007, the Bankruptcy Court filed a written order granting the Licalsis' motion for summary judgment on their embezzlement claim, (AR 0246-47); that same day, the Bankruptcy Court filed a Judgment, entering judgment in favor of the Licalsis and against Gilner on the embezzlement claim in the amount of $51,400 and dismissing the Licalsis' remaining claims against Gilner, (AR 0249-50). Gilner timely appealed.

**LEGAL STANDARD**

The Bankruptcy Court's grant of summary judgment is reviewed de novo. See Focus Media, Inc. v. National Broadcasting Co. (In re Focus Media, 378 F. 3d 916, 922 (9th Cir. 2004). "Summary judgment is appropriate if the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." See id. (internal quotation and citation omitted).

**DISCUSSION**

As noted, the Bankruptcy Court granted summary judgment in favor of the Licalsis

---

[1]The FAC refers to Szabo as "Tabo Szabo." The record indicates, however, that Szabo's first name is Tibor. (See AR 0044.)

1  on their embezzlement claim, finding there was no triable issue of material fact.  (See AR

2  0230-31, 0238.)  Gilner, who proceeded pro se in the Bankruptcy Court and proceeds pro

3  se on appeal, argues the Bankruptcy Court erred because, she asserts, triable issues of

4  material fact exist as to whether she committed embezzlement.[2]

5        To prove a claim of embezzlement, a plaintiff must establish the following elements:

6  "(1) property rightfully in the possession of a nonowner; (2) the nonowner's appropriation of

7  the property to a use other than which it was entrusted; and (3) circumstances indicating

8  fraud."  See Littleton v. Transamerica Commercial Fin. Corp., 942 F. 2d 551, 555 (9th Cir.

9  1991) (internal quotation, alteration, and citation omitted).[3]  For the reasons stated below,

10  the Court finds the Licalsis established there was no triable issue of material fact as to any

11  of the elements of embezzlement, and, accordingly, the Bankruptcy Court did not err in

12  granting summary judgment in favor of the Licalsis.

13  **A.  Property Rightfully In Possession Of Nonowner**

14        The first element is that a nonowner of property, such as Gilner, rightfully possessed

15  the property at issue.  See id.

16        In the Bankruptcy Court, the Licalsis offered evidence that Gilner obtained

17  possession of the Licalsis' piano rightfully, in light of the parties' having entered into the

18  Consignment Agreement, under which Gilner would sell the piano for the Licalsis, (see AR

19  0029, 0034); Gilner offered no evidence to the contrary, and, indeed, conceded the piano

20  was "rightfully possessed by Gilner," (see Pl.'s Mot. for Denial of Summ. J. at 4:15).[4]

21

22     [2]Gilner does not contend the Bankruptcy Court erred with respect to the amount of damages the Bankruptcy Court found to be undisputed.

23
24     [3]"Fraud," in the context of a claim for embezzlement against a debtor, is "fraud in fact, involving moral turpitude or intentional wrong, rather than implied or constructive fraud."  See Teamsters Local 533 v. Schultz (In re Schultz), 46 B.R. 880, 889 (Bankr. D.
25  Nev. 1985).

26     [4]Plaintiff's "Motion for Denial of Summary Judgment," filed in the Bankruptcy Court, is attached as an exhibit to a document filed herein by Gilner and titled "Final Opportunity to Show Cause Why Appeal Should Not Be Dismissed - and Copies of Filed Documents
27  Relevant to the Issue Presented."  Because plaintiff's "Motion for Denial of Summary Judgment" is verified, the factual statements therein were properly considered by the
28  Bankruptcy Court as evidence offered in opposition to the motion for summary judgment.

1    Accordingly, the Bankruptcy Court did not err in finding it was undisputed that the

2  piano was rightfully in the possession of Gilner.

3  **B. Nonowner's Misappropriation Of Property**

4    The second element is the nonowner's appropriation of the property to a use other

5  than that for which it was entrusted.  See Littleton, 942 F. 2d at 555.

6    The Consignment Agreement unambiguously provides that the Licalsis entrusted the

7  piano to Gilner for the sole purpose of Gilner's selling the piano, that any sale by Gilner had

8  to be approved in advance by the Licalsis, and that Gilner was authorized to retain only a

9  portion of the sales proceeds as a commission.  (See AR 0034.)  The Licalsis presented

10  evidence that after Gilner executed the Consignment Agreement, Gilner entered into an

11  agreement with Szabo, under which Szabo agreed to show the piano at his showroom and

12  to "help" Gilner market the piano in return for his receiving monetary compensation from

13  Gilner, (see AR 0078, 0129); that Szabo sold the piano to a third party on September 25,

14  2002 for $63,000, (see AR 0090, 0130); that the Licalsis never gave consent for such sale,

15  (see AR 0031, 0048); and that the Licalsis received no proceeds therefrom, (see AR 0031,

16  0048).  In sum, the Licalsis offered evidence to support a finding that although the Licalsis'

17  entrusted Gilner to sell the piano only after the Licalsis consented to a sale and only if they

18  were paid the proceeds less the commission due, the piano was sold without the Licalsis'

19  consent and without any payment to the Licalsis.

20    Gilner points to no evidence in the record to dispute any of the above-referenced

21  evidence, and, consequently, said evidence is undisputed.  Further, Gilner concedes that

22  Szabo acted as Gilner's "agent."  (See Pl.'s Mot. for Denial of Summ. J. at 2:13-14.)  Gilner

23  argues a triable issue of fact nonetheless exists.

24    First, Gilner relies on evidence that she advised Linda Licalsi that they "could

25  probably get more" if the piano were shown at Szabo's showroom, and that Linda Licalsi

26  //

27  //

28  //

4

then agreed the piano could be shown at Szabo's showroom.  (See Tunni Decl. ¶ 5.)[5]

Although not clearly expressed, Gilner appears to argue that, by consenting to allow Szabo

to show the piano, Linda Licalsi also consented to have Szabo sell the piano.  Such

evidence is not sufficient to defeat summary judgment, however, as a finding that Linda

Licalsi agreed that an agent of Gilner could show the piano does not support a finding that

Linda Licalsi agreed that such agent was authorized to consummate a sale of the piano

without the Licalsis' consent and without making any payment to the Licalsis.

　　　　Second, Gilner relies on evidence that Szabo did not turn over all of the proceeds of

the sale to Gilner, (see Pl.'s Mot. for Denial of Summ. J. at 2:20-21), which, Gilner asserts,

supports a finding that "[t]he damage was done to the Licalsis solely by Tibor Szabo and

[his company]," (see id. at 3:16-17).  Again, Gilner's reliance on the evidentiary record is

unavailing.  As noted, Gilner concedes Szabo was acting as her agent.  Moreover, it is

undisputed that Gilner was aware of Szabo's sale, either shortly before or shortly

thereafter, (see AR 0092-93; Pl.'s Mot. for Denial of Summ. J. at 2:16-17), that Gilner

never sought the Licalsis' consent to the sale or provided any of the proceeds to the

Licalsis, (see AR 0031, 0048), and that Gilner retained a portion of the proceeds as a

commission, (see AR 0169-70; Pl.'s Mot. for Denial of Summ. J. at 4:22-24.)  Under such

circumstances, Gilner is liable, as a matter of law, for the actions of her agent Szabo.  See

Tsurukawa v. Nikon Precision, Inc. (In re Tsurukawa), 358 B.R. 192, 196-98 (B.A.P. 9th

2001) (citing cases attributing "wrongdoing" of third party to debtor, where "agency

relationship" exists between third party and debtor); see also La Trattoria, Inc. v. Lansford

(In re Lansford), 822 F. 2d 902, 905 (9th Cir. 1987) (noting but not deciding issue of

whether imputation of agent's conduct to debtor requires "some culpability on the part of

the [debtor]").

//

---

[5]The Declaration of John Tunni, filed in the Bankruptcy Court, is attached as an exhibit to plaintiff's "Final Opportunity to Show Cause Why Appeal Should Not Be Dismissed - and Copies of Filed Documents Relevant to the Issue Presented."

1      Accordingly, the Bankruptcy Court did not err in finding it was undisputed Gilner

2 appropriated the piano for a use other than that for which it had been entrusted.

3 **C. Circumstances Indicating Fraud**

4      The third element is the presence of circumstances indicating fraud. See Littleton,

5 942 F. 2d at 555.

6      The Licalsis presented evidence that, after Szabo's sale of the piano, Gilner made

7 false statements to the Licalsis as to the status of the piano. Specifically, the Licalsis

8 offered evidence that, on April 28, 2003, approximately seven months after the piano had

9 been sold by Szabo with Gilner's knowledge, Linda Licalsi contacted Gilner by telephone to

10 inquire about the status of the piano, (see AR 0030), and that, during said conversation,

11 Gilner claimed, varoiusly, to have "sent the [p]iano to Arizona for repairs," to have "received

12 a $1,000 down payment from a potential buyer in California," and to have "sold the [p]iano

13 for about $30,000," (see id.); at no time during the conversation did Gilner inform Licalsi

14 that Szabo had sold the piano in September 2002 for $63,000, (see id.). Further,

15 according to Linda Licalsi, she telephoned Szabo later that day and learned the truth, or at

16 least some of the truth; Szabo, at that time, advised Linda Licalsi that he had sold the

17 piano in "the fall of 2002," although he gave her "several different sales prices." (See AR

18 0031).

19      Gilner points to no evidence to contradict any of the above evidence, and,

20 consequently, it is undisputed that Gilner, knowing the piano had been sold in September

21 2002 for $63,000, knowing such sale had occurred without the Licalsis's consent, knowing

22 she had not provided any proceeds to the Licalsis, and knowing she had retained part of

23 the proceeds she believed to encompass her commission, falsely advised Linda Licalsi that

24 the piano had recently been sold for "about $30,000." No reasonable trier of fact could find

25 such conduct was other than fraudulent.

26      Accordingly, the Bankruptcy Court did not err in finding it was undisputed that Gilner

27 engaged in fraudulent conduct.

28 //

6

**CONCLUSION**

For the reasons stated, the judgment of the Bankruptcy Court is hereby AFFIRMED.

**IT IS SO ORDERED.**

Dated: February 27, 2008

_____
MAXINE M. CHESNEY
United States District Judge